# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**Eugenio García-Pellot,**

    Petitioner

        v.

**United States of America,**

    Respondent.

CIVIL NO. 15-1397 (PG)
Related Crim. No. 10-175 (PG)

## OPINION AND ORDER

Before the court is petitioner Eugenio García-Pellot's ("Petitioner" or "García") motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (Docket No. 1), and the United States' (or the "government") response in opposition thereto (Docket No. 3). For the reasons explained below, the court **DENIES** petitioner's motion to vacate.

## I. BACKGROUND

On May 5, 2010, a grand jury returned a six-count Indictment charging García and sixty-nine other individuals with, *inter alia,* conspiring to possess with intent to distribute narcotics within 1,000 feet of a public housing facility (Count One), and possessing a firearm during and in relation to a drug-trafficking crime (Count Two). See Crim. No. 10-175 (PG) (hereinafter "Crim."), Docket No. 3. According to the Indictment, beginning around 2002 until 2010 Petitioner and his co-defendants participated in a drug-trafficking organization ("DTO") run out of a public housing project in Carolina, Puerto Rico. The Indictment identified García as an "enforcer" for the DTO, whose job was to protect DTO leaders, members, drug merchandise, and the proceeds obtained from drug sales with firearms. See id. at p. 13. He would often act as "runner" too. See id. On May 17, 2010, the court held García's arraignment and detention hearing, where he entered a plea of not guilty. Crim. Docket No. 233. He eventually moved for a change of plea. Crim. Docket No. 696.

On January 10, 2011, the court held García's change of plea hearing, where he pled guilty as to Count One of the Indictment under 21 U.S.C. §§ 841, 846 and 860. Crim. Docket No. 710. Pursuant to the U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2D1.1(c)(4), the Plea Agreement stipulated a base offense level of thirty-two (32) based on an agreed-upon quantity range (between five and

fifteen kilograms) and type (cocaine) of controlled substance. See Crim. Docket No. 711 at pp. 4-5. In addition, the Plea Agreement calculated a total offense level of thirty-three (33) based on the following:

**(1)** a two-level (+2) increase pursuant to § 2D1.1(a)(1) because the charge stemmed from a drug-distribution conspiracy that took place in a protected location;
**(2)** a two-level increase (+2) pursuant to § 2D1.1(b)(1) because the defendant possessed a firearm; and
**(3)** a three-level reduction (-3) pursuant to § 3E1.1(b), because the defendant accepted responsibility.

See id. at p. 5; see also Crim. Docket No. 1122.

The Plea Agreement contained no stipulation as to García's criminal history category but assumed a criminal history category of one, for a sentencing range of 135 to 168 months. Id. The parties agreed that García could request a sentence of 135 months and the United States reserved the right to request a sentence up to 168 months of imprisonment. See id. The Plea Agreement expressly warned that García's sentence would be subject to the discretion of the sentencing judge and the advisory nature of the United States Sentencing Guidelines.

On May 17, 2011, the court held García's sentencing hearing. He was sentenced to a term of imprisonment of 135 months, a term of supervised release of ten years, and a special monetary assessment of one hundred ($100.00) dollars as to Count One of the Indictment.[1] See Crim. Docket No. 1263. Judgment was entered on May 27, 2011. García did not appeal his conviction and sentence. Therefore, the judgment became final on June 11, 2011. See Crim. Docket Nos. 1190 and 1263.

On April 14, 2015, García filed the motion now before the court, challenging his guilty plea, which resulted in the two-level firearm enhancement imposed at sentencing. See Docket No. 1. Petitioner claims that said enhancement was the equivalent of him pleading guilty to the firearm offense charged in Count Two of the Indictment, which was dismissed. Id. at pp. 5-10. García admits that his motion to vacate is untimely and that his claims are procedurally defaulted. Nevertheless, he asserts "actual innocence" in order to excuse his untimeliness and procedural default.

---

[1] On November 4, 2014, García filed a motion for reduction of sentence under 18 U.S.C. § 3582(c)(2), and on October 27, 2015, the court granted his request, reducing his term of imprisonment from 135 months to 120 months.

On May 14, 2015, the United States filed its response in opposition, requesting summary dismissal of the motion to vacate. See Docket No. 3. In support, the government argues that Petitioner has failed to identify extraordinary circumstances warranting equitable tolling of the one-year limitations period governing § 2255 petitions. The United States further contends that García has not presented any evidence with which to support his "actual innocence" claim, and therefore, cannot excuse his procedural default.

## II.   LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move to vacate, set aside, or correct his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C § 2255(a); Hill v. United States, 368 U.S. 424, 426-427 (1962); Ellis v. United States, 313 F.3d 636, 641 (1st Cir. 2002).

## III.   DISCUSSION

**A. Statute of Limitations**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), prisoners have a one-year period limitations period from the date on which their convictions become final within which to seek federal habeas relief under 28 U.S.C. § 2255. See e.g. Pratt v. United States, 129 F.3d 54, 58 (1st Cir. 1997). The limitation period begins to run from the latest of:

> **(1)** the date on which the judgment of conviction becomes final;
> **(2)** the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> **(3)** the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> **(4)** the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

The First Circuit Court of Appeals has held that this one-year limitations period is subject to equitable tolling in certain, "appropriate" circumstances.

See Ramos-Martínez v. United States, 638 F.3d 315, 322 (1st Cir. 2011) (relying on Holland v. Florida, 560 U.S. 631 (2010)). In order to benefit from equitable tolling, a petitioner bears a substantial burden of demonstrating (1) that he exercised reasonable diligence in trying to preserve his rights but (2) he was prevented from timely filing his habeas petition due to extraordinary circumstances. See Holmes v. Spencer, 822 F.3d 609, 611 (1st Cir. 2016); Dominguez v. Duval, 527 F. App'x. 38, 39 (1st Cir. 2013).

In this case, the court entered Petitioner's judgment of conviction on May 27, 2011. See Crim. Docket No. 1263. Pursuant to Federal Rule of Appellate Procedure 4(b), he had fourteen days thereafter to file a notice of appeal. See Fed. R. App. P. 4(b). But since García did not seek appellate review, his judgment became "final" for habeas purposes once the deadline for filing a notice of appeal expired, that is, on June 11, 2011. See Torres-Pacheco v. United States, No. CV 16-2684 (DRD), 2017 WL 4620981, at *2 (D.P.R. Oct. 13, 2017) (citing cases). He had until June 11, 2012 to move for federal habeas relief. See 28 U.S.C. § 2255(f)(1). However, Petitioner filed his § 2255 petition on March 25, 2015, almost four years after the fact.

García concedes that his petition is untimely. See Docket No. 1. In fact, his motion sets forth a discussion of AEDPA's statute of limitations and the requisite showings he must make to justify collateral relief under § 2255, even if untimely. See id. at pp. 14-15. However, García has not presented properly supported facts that demonstrate that (1) he pursued his rights diligently and (2) extraordinary circumstances stood in the way of his timely filing. See Holmes, 822 F.3d at 611; Ramos-Martínez, 638 F.3d at 322. Consequently, the court finds that Petitioner is not entitled to equitable tolling.[2]

**B. Actual Innocence**

Withal, Petitioner has asserted "actual innocence" of the firearm conduct resulting in the two-level increase in an attempt to excuse both his untimely

---

[2] Having so ruled, the court need not reach the merits of García's challenge to his guilty plea, which he attempts to bring on the coattails of an ineffective assistance of counsel claim. See Docket No. 1 at pp. 8-10. Even if the court were to side-step the untimeliness of García's petition, the fact is that he would fail on the merits of that claim as he has not demonstrated that his attorney's performance fell below an objective standard of reasonableness; and that, but for his attorney's alleged errors, García would have chosen to wait or push for a better plea deal, or instead proceeded to trial. See Strickland v. Washington, 466 U.S. 668, 688 (1984); United States v. Colon-Torres, 382 F.3d 76, 86 (1st Cir. 2004); Torres-Santiago v. United States, 865 F.Supp. 2d 168, 178 (D.P.R. 2012).

filing and his procedural default. Out of an abundance of caution, the court considers the issue below.

Generally, federal prisoners are barred from raising claims on collateral review that could have been raised on direct appeal. See Davis v. United States, 417 U.S. 333, 345 n.15 (1974). However, an exception has been carved out for cases where federal prisoners can establish either, "cause" (for the waiver) and "actual prejudice" resulting from the alleged constitutional violation, or "actual innocence." See Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Murray v. Carrier, 477 U.S. 478, 485 (1986)). For the actual innocence exception to succeed, a petitioner must support his claim with new reliable evidence not previously presented. See Schlup v. Delo, 513 U.S. 298, 324 (1995); see also McQuiggin v. Perkins, 569 U.S. 383, 401 (2013) (holding that a claim of actual innocence must be supported with "strong" evidence).

As noted above, Petitioner maintains that he is "actually innocent" of possessing a firearm. Docket No. 1 at pp. 5-7. In its response, the government correctly argues that García "is not arguing to be innocent of the charge of conviction but of an enhancement that was stipulated by the parties pursuant an agreement and accepted by the court upon defendant's representations." See Docket No. 3 at p. 5. This, the United States avers, dooms his claim. The court agrees with the government.

Upon a review of the motion to vacate, the court is convinced that Petitioner has only asserted actual innocence of the two-level firearm increase imposed at the sentencing stage. See Docket No. 1 at pp. 7 and 17. He does not allege that he is innocent of the charge of conviction, i.e., the drug-trafficking count, to which he knowingly, intelligently and voluntarily pled guilty. See id. at p. 5. Yet, Petitioner has failed to present any evidence, let alone "strong" evidence, with which to demonstrate that he is indeed innocent of the firearm possession conduct resulting in the challenged increase.[3] Therefore, the court finds that his claims, even if considered timely, necessarily fail.

---

[3] The court has reached this conclusion after a thorough examination of the documents submitted by Petitioner in support of his motion to vacate. See Docket No. 1-1.

### IV. EVIDENTIARY HEARING

Petitioner has requested an evidentiary hearing. Docket No. 1 at pp. 15-16. But evidentiary hearings in § 2255 cases are the exception, not the norm, and the petitioner bears a heavy burden to demonstrate that a hearing is warranted. See Moreno-Morales v. United States, 334 F.3d 140 (1st Cir. 2003). A hearing "is not necessary when the § 2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and records of the case." See United States v. McGill, 11 F.3d 223, 225-26 (1st Cir. 1993) (quoting Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir. 1974)). "In other words, a '§ 2255 motion may be denied without a hearing as to those allegations which, if accepted as true, entitle the movant to no relief, or which need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible.'" Id. at 226 (quoting Shraiar v. United States, 736 F.2d 817, 818 (1st Cir. 1984)).

In García's case, the court has already ruled that he neither is entitled to equitable tolling nor meets the actual innocence exception to allow consideration of his untimely petition and procedurally defaulted claims. Having so ruled, the court finds that a hearing is not warranted. Accordingly, Petitioner's request for a hearing is **DENIED.**

### V. CONCLUSION

Based on the foregoing, Petitioner's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (Docket No. 1) is **DENIED**, and the case is **DISMISSED WITH PREJUDICE.** Judgment shall be entered accordingly.

### VI. CERTIFICATE OF APPEALABILITY

It is further ordered that no certificate of appealability should be issued in the event that Petitioner files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, March 21, 2018.

S/ JUAN M. PÉREZ-GIMÉNEZ
**JUAN M. PEREZ-GIMENEZ**
**SENIOR U.S. DISTRICT JUDGE**